IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-569-FL

BEATRICE MAE PERSON,                    )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        **MEMORANDUM**
                                        )    **AND RECOMMENDATION**
NANCY A. BERRYHILL,[1]                   )
Acting Commissioner of Social Security, )
                                        )
            Defendant.                  )

       In this action, plaintiff Beatrice Mae Person ("plaintiff" or, in context, "claimant")

challenges the final decision of defendant Acting Commissioner of Social Security Nancy A.

Berryhill ("Commissioner") denying her application for a period of disability and disability

insurance benefits ("DIB") and Supplemental Security Income ("SSI") on the grounds that she is

not disabled.[2] The case is before the court on the parties' motions for judgment on the pleadings.

D.E. 14, 16. Both filed memoranda in support of their respective motions. D.E. 15, 17. The

motions were referred to the undersigned magistrate judge for a memorandum and

recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). *See* 1 Apr. 2016 Text Ord. For the

reasons set forth below, it will be recommended that the Commissioner's motion be allowed,

plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

---

[1] Nancy A. Berryhill has succeeded the former defendant, Carolyn W. Colvin, as the Acting Commissioner of Social
Security and has been substituted for her as the defendant in this case pursuant to Fed. R. Civ. P. 25(d) ("An action
does not abate when a public officer who is a party in an official capacity . . . ceases to hold office while the action
is pending. The officer's successor is automatically substituted as a party.").

[2] The statutes and regulations applicable to disability determinations for DIB and SSI are in most respects the same.
The provisions relating to DIB are found in 42 U.S.C. subch. II, §§ 401, *et seq.* and 20 C.F.R. pt. 404, and those
relating to SSI in 42 U.S.C. subch. XVI, §§ 1381, *et seq.* and 20 C.F.R. pt. 416.

# I.    BACKGROUND

## A.    Case History

Plaintiff filed applications for DIB and SSI on 18 December 2012, alleging a disability onset date of 13 September 2012. Transcript of Proceedings ("Tr.") 12. The applications were denied initially and upon reconsideration, and a request for a hearing was timely filed. Tr. 12. On 7 October 2014, a hearing was held before an administrative law judge ("ALJ"), at which plaintiff, represented by counsel, and a vocational expert testified. Tr. 26-54. The ALJ issued a decision denying plaintiff's claims on 15 December 2014. Tr. 12-20. Plaintiff timely requested review by the Appeals Council. Tr. 8. On 21 October 2015, the Appeals Council denied the request for review. Tr. 2-7. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481. On 27 October 2015, plaintiff commenced this proceeding for judicial review of the ALJ's decision, pursuant to 42 U.S.C. §§ 405(g) (DIB) and 1383(c)(3) (SSI). *See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Ord. Allowing IFP Mot. (D.E. 4); Compl. (D.E. 5).

## B.    Standards for Disability

The Social Security Act ("Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). "An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A); *see* 42 U.S.C. §

1382c(a)(3)(B).  The Act defines a physical or mental impairment as "an impairment that results

from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3),

1382c(a)(3)(D).

The disability regulations under the Act ("Regulations") provide a five-step analysis that

the ALJ must follow when determining whether a claimant is disabled:

> To summarize, the ALJ asks at step one whether the claimant has been working;
> at step two, whether the claimant's medical impairments meet the [R]egulations'
> severity and duration requirements; at step three, whether the medical
> impairments meet or equal an impairment listed in the [R]egulations; at step four,
> whether the claimant can perform her past work given the limitations caused by
> her medical impairments; and at step five, whether the claimant can perform other
> work.

> The first four steps create a series of hurdles for claimants to meet. If the ALJ
> finds that the claimant has been working (step one) or that the claimant's medical
> impairments do not meet the severity and duration requirements of the
> [R]egulations (step two), the process ends with a finding of "not disabled."  At
> step three, the ALJ either finds that the claimant is disabled because her
> impairments match a listed impairment [*i.e.*, a listing in 20 C.F.R. pt. 404, subpt.
> P, app. 1 ("the Listings")] or continues the analysis. The ALJ cannot deny benefits
> at this step.

> If the first three steps do not lead to a conclusive determination, the ALJ then
> assesses the claimant's residual functional capacity ["RFC"], which is "the most"
> the claimant "can still do despite" physical and mental limitations that affect her
> ability to work. [20 C.F.R.] § 416.945(a)(1).[3] To make this assessment, the ALJ
> must "consider all of [the claimant's] medically determinable impairments of
> which [the ALJ is] aware," including those not labeled severe at step two. *Id.* §
> 416.945(a)(2).[4]

> The ALJ then moves on to step four, where the ALJ can find the claimant not
> disabled because she is able to perform her past work. Or, if the exertion required
> for the claimant's past work exceeds her [RFC], the ALJ goes on to step five.

---

[3] *See also* 20 C.F.R. § 404.1545(a)(1).

[4] *See also* 20 C.F.R. § 404.1545(a)(2).

At step five, the burden shifts to the Commissioner to prove, by a preponderance of the evidence, that the claimant can perform other work that "exists in significant numbers in the national economy," considering the claimant's [RFC], age, education, and work experience. *Id.* §§ 416.920(a)(4)(v); 416.960(c)(2); 416.1429.[5] The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations. If the Commissioner meets her burden, the ALJ finds the claimant not disabled and denies the application for benefits.

*Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015).

## C.    ALJ's Findings

Plaintiff was 50 years old on the alleged onset date of disability and 52 years old on the date of the hearing. *See, e.g.*, Tr. 18 ¶ 6; 30. The ALJ found that plaintiff has at least a high school education (Tr. 18 ¶ 6) and past relevant work as a machine packager (Tr. 18 ¶ 6).

Applying the five-step analysis of 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability. Tr. 14 ¶ 2. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: systemic lupus erythematosus, obesity, and cervical degenerative disc disease. Tr. 14 ¶ 3. At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. Tr. 14 ¶ 4.

The ALJ next determined that plaintiff had the RFC to perform a limited range of light work:

[T]he claimant has the [RFC] to perform light work (i.e. lift and carry up to 20 pounds occasionally and 10 pounds frequently and sit for six hours, and stand and/or walk for 6 hours in an 8-hour workday) as defined in 20 CFR 404.1567(b) and 416.967(b)[6] except she can frequently handle and finger; she can

---

[5] *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c)(2), 404.929.

[6] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Light Work," 1991 WL 688702. "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. §§ 404.1567, 416.967.

occasionally climb ladders, ropes and scaffolds; and she can frequently climb stairs, stoop, crouch, kneel and crawl.

Tr. 15 ¶ 5.

Based on his determination of plaintiff's RFC and the testimony of the vocational expert, the ALJ found at step four that plaintiff was capable of performing her past relevant work as a machine packager as actually performed. Tr. 18 ¶ 6. The ALJ made the alternative finding at step five, again based on the vocational expert's testimony, that there were other jobs in significant numbers in the national economy that plaintiff could perform, including jobs in the occupations of x-ray inspector, mail clerk, and laundry classifier. Tr. 19 ¶ 6. The ALJ accordingly concluded that plaintiff was not disabled from the alleged onset of disability, 13 September 2012, through the date of the decision, 15 December 2014. Tr. 19 ¶ 7.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. §§ 405(g) and 1383(c)(3), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Id*.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

III.    **OVERVIEW OF PLAINTIFF'S CONTENTIONS**

Plaintiff contends that this case should be remanded for the award of benefits or, in the alternative, a new hearing on the grounds that the ALJ erred in (1) failing to find that she met or medically equaled Listings 1.04 and 14.02; (2) improperly assessing the opinions of treating certified family nurse practitioner Caitlin J. Phillips, FNP; and (3) determining her to have the RFC for a limited range of light work. The court will address each contention in turn. Before doing so, however, the court will review the ALJ's credibility determination. Although plaintiff does not directly challenge the ALJ's determination that plaintiff's allegations are not fully credible, she relies upon her own testimony for many of her contentions. The court therefore

deems it appropriate at the outset of its analysis of the ALJ's decision to review the credibility determination.

## IV.    ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY

### A.    Applicable Legal Standards

As previously noted, this court is not permitted to make credibility assessments, but must determine if the ALJ's credibility assessment is supported by substantial evidence. *Craig*, 76 F.3d at 589. The ALJ's assessment involves a two-step process. First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594-95. Next, the ALJ must evaluate plaintiff's statements concerning those symptoms. *Id*. The ALJ's "'decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record.'" *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006) (quoting Soc. Sec. Ruling 96-7p, 1996 WL 374186, at *2 (2 July 1996)).[7]

In assessing a claimant's credibility, the ALJ must consider "all of the available evidence." 20 C.F.R. §§ 404.1529(c)(1), 416.929(c)(1). The evidence that should be considered includes: the claimant's history; signs and laboratory findings; statements from the claimant, the claimant's treating and nontreating sources about how the claimant's symptoms affect the claimant, including medical opinions; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of his pain or other symptoms; any measures the claimant uses or has used to relieve his pain or other symptoms; and other factors concerning the claimant's

---

[7] Although Soc. Sec. Ruling 96-7p was rescinded by Soc. Sec. Ruling 16-3p, 2016 WL 1119029 (issued 16 Mar. 2016; effective 28 Mar. 2016 pursuant to 81 Fed. Reg. 15776 (24 Mar. 2016)), it postdates the ALJ's decision in this case, issued 15 December 2014.

functional limitations and restrictions due to pain or other symptoms. *Id.* §§ 404.1529(c)(1)-(3); 416.929(c)(1)-(3).

"A party seeking benefits need not provide objective medical evidence to corroborate his allegations of pain." *Hall v. Astrue*, No. 2:11-CV-22-D, 2012 WL 3727317, at *2 (E.D.N.C. 28 Aug. 2012). "However, an ALJ may discredit a party's allegations of pain to the extent the allegations are inconsistent with (1) objective medical evidence of the underlying impairment or (2) the pain reasonably expected to be caused by the underlying impairment." *Id.* (citing *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006)); *Craig*, 76 F.3d at 595.

## B. Analysis

The ALJ summarized plaintiff's testimony as follows:

> The claimant testified that she had lupus, causing constant diffuse bodily pain and swelling. It caused fatigue as well. She also had cervical spine issues and needed surgery on one of her discs. She said it was difficult for her to write, type, or open doors. She also alleged trouble with prolonged sitting and standing. She estimated that she could walk up to 5 minutes at a time and she could not lift more than 5 pounds. She used to volunteer answering phones but had reduced her time to only once per week. Her daily activities included taking her medications, eating, taking a walk, reading, and watching television. She claimed that her daughter performed the household chores and her only social activity was going to church.

Tr. 16 ¶ 5.

At step one of the credibility analysis, the ALJ determined that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 16 ¶ 5. However, at the second step, the ALJ found that plaintiff's "statements . . . concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 16 ¶ 5.

Following a detailed review of the medical and other evidence, the ALJ explained the bases for his credibility determination as follows:

The above-summarized evidence demonstrates that the claimant's systemic lupus erythematosus, obesity, and cervical degenerative disc disease do provide for limitations in her abilities as evidenced by the medical evidence of record and her testimony at the hearing. However, the record also shows that the claimant's conditions are not totally debilitating. Her [RFC] is generally supported by the objective medical evidence. The claimant reports chronic pain as a result of lupus and cervical disc disease. Her physical examinations have shown an antalgic gait and some reduction in lower extremity muscle strength, though this was very mild. Yet, she had consistently good range of motion in all extremities and no joint deformities. Her fatigue was deemed "moderate" by her treating FNP [*i.e.*, FNP Phillips] but her sister indicated she was able to perform daily activities despite her pain. Although the claimant's obesity may exacerbate her musculoskeletal problems, there is no evidence that it has actually caused or contributed to any secondary conditions. Further, there is nothing to suggest that her weight precludes her from performing routine movements in a typical work environment. Notably, she consistently demonstrated good range of motion and near full muscle strength in all extremities. The claimant's treatment for her conditions have shown only mild restrictions with few if any recommendations for more aggressive treatment and her allegations of disability are not consistent with the minimal objective findings. However, recognizing that the claimant does have limitations because of her conditions, the undersigned has reduced her residual functioning capacity to light work with the additional limitations noted above.

Tr. 17 ¶ 5.

As indicated, plaintiff does not allege error in the ALJ's credibility assessment and the court finds none. It is supported by substantial evidence of record, including the evidence cited by the ALJ in explaining it, and based on proper legal standards

## V.    ALJ'S LISTING DETERMINATION

### A.    Listing Requirements

The Listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet a listing, that fact alone establishes that the claimant is disabled. *Id*. §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); Soc. Sec. Ruling 83-19, 1983 WL 31248, at *2 (1983). The burden of demonstrating

that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

Even if an impairment does not meet the listing criteria, it can still be deemed to satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5), 416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity and duration to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a) (medical findings must be at least equal in severity and duration to the listed criteria), 416.926(a) (same). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531.

"[W]hen an ALJ finds that a claimant has a severe impairment and the record contains evidence of related 'symptoms [that] appear to correspond to some or all of the requirements of [a listing, the ALJ must] . . . explain the reasons for the determination that [the claimant's severe impairment] did not meet or equal a listed impairment.'" *Jones ex rel. B.J. v. Astrue*, No. 1:09CV45, 2012 WL 1267875, at *2 (M.D.N.C. 16 Apr. 2012) (quoting *Cook v. Heckler*, 783 F.2d 1168, 1172 (4th Cir. 1986)), *rep. & recomm. adopted*, Ord. (22 May 2012) (D.E. 19); *Money v. Astrue*, No. 1:08cv895, 2011 WL 3841972, at *8 (M.D.N.C. 26 Aug. 2011) ("The ALJ also may not include a conclusory statement that the claimant does not have an impairment or combination of impairments that meets a listed impairment." (citing *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989))); *cf. Kelly v. Astrue*, No. 5:08-CV-289-FL, 2009 WL 1346241, at *5 (E.D.N.C. 12 May 2009) ("[T]he ALJ is only required to explicitly identify and discuss relevant

listings of impairments where there is 'ample evidence in the record to support a determination' that an impairment meets or medically equals a listing." (citations omitted)).

B.      Listing 1.04

Listing 1.04 relates to spinal disorders.  It provides:

1.04      *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:

A.      Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or

B.      Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours; or

C.      Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

Listing 1.04.  "Inability to ambulate effectively" generally means "having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."  Listing 1.00B2b(1). Thus, to satisfy Listing 1.04, a claimant must satisfy the diagnostic definition and the criteria in at least one of paragraphs A, B, or C.

The ALJ began his analysis by addressing the Listings generally:

The undersigned finds that [the claimant's] impairments, singly or in combination, based upon a review of the medical evidence, do not meet listing level severity, and no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment.

Tr. 15 ¶ 4.

The ALJ then turned to Listing 1.04 specifically:

The claimant does not have a spinal disorder resulting in compromise of a nerve root or the spinal cord with [A] evidence of nerve root compression; [B] spinal arachnoiditis; or [C] lumbar stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b, as required for disorders of the spine to meet Listing 1.04.

Tr. 15 ¶ 4 (referring to paragraphs A, B, and C, as indicated).

Plaintiff does not specify which paragraph of this listing she contends she satisfies or even set out any of the criteria of the listing. Her entire argument on the merits reads:

Plaintiff suffers from chronic neck and shoulder pain. Plaintiff has routinely been treated for these impairments since at least October 2011. Plaintiff has been assessed as suffering from cervical radiculopathy. An MRI [on 3 January 2012] revealed a broad-based disc osteophyte complex with left paracentral posterior disc protrusion with mild mass effect on the cord at C4-5 and adjacent level degeneration with disc herniation at C4-5 with cord and root impingement causing neck and right upper extremity pain. (T pp. 259-284) When [consulting state agency examiner William G. Clark, M.D.] evaluated plaintiff [on 21 March 2013] for a disability determination evaluation he documented that plaintiff does indeed get pain to her cervical spine and has recurrent cervical spine disease. (T pp. 324-334[)].[8] This combination of symptoms should result in the plaintiff meeting and/or equaling the functional equivalent of the listing.
. . . .
ALJ Miller failed to adequately consider the medical evidence in the record in determining that Ms. Person's impairments did not meet or medically equal Listings 1.04 . . . .

Pl.'s Mem. 6, 7. Plaintiff's failure to identify the specific criteria which she contends she satisfies, and how, alone justifies rejection of her challenge to the ALJ's determination on Listing 1.04. See, e.g., Hayes v. Colvin, No. 5:15-CV-253-D, 2016 WL 4257191, at *8 (E.D.N.C. 6 July 2016), mem. & recomm. adopted, 2016 WL 4257464, at *2 (11 Aug. 2016).

---

[8] This citation is not to Dr. Clark's report. It and the records appended to it appear at Tr. 294-97 and 298-302, respectively.

On the merits, the court finds that substantial evidence supports the ALJ's determination that her impairments do not satisfy the criteria in any of the three paragraphs of Listing 1.04. As to the paragraph A criteria, the medical records do not appear to contain any diagnosis of plaintiff for nerve root compression. *See* Listing 1.04A. Nor has plaintiff alleged the existence of any such diagnosis. The ALJ's determination that plaintiff does not meet Listing 1.04A is therefore supported by substantial evidence.

The court reaches the same conclusion regarding the ALJ's determination that her impairments are not medically equivalent to the criteria of Listing 1.04A. To the extent that plaintiff relies upon her own testimony, the ALJ properly found it not fully credible, as previously discussed. Plaintiff's having been assessed with cervical radiculopathy, the 3 January 2012 MRI plaintiff cites (*see* Tr. 269), and the report of Dr. Clark do not compel a finding, but can reasonably be interpreted as not showing that plaintiff's impairments are equivalent in severity and duration to Listing 1.04A. Further, on 15 May 2013, at the claim reconsideration level, nonexamining state agency consulting physician Jagjit Sandhu, M.D. considered Listing 1.04, as well as Listing 14.02, but determined that plaintiff did not medically equal, or meet, them as indicated by his proceeding with a physical RFC determination and executing the determination transmittal sheet. *See* Tr. 80-81 (DIB), 82-84 (DIB), 93-94 (SSI), 95-97 (SSI), 100 (DIB), 101 (SSI)). Dr. Sandhu's determination substantiates that plaintiff does not have any impairments meeting or medically equaling Listing 1.04A, or any other of the Listings. *See* Soc. Sec. Ruling 96-6p, 1996 WL 374180, at *3 (2 July 1996) (signed transmittal form ensures that a state agency medical consultant has considered the issue of equivalence to any listing). The ALJ gave significant weight to the assessment of Dr. Sandhu. Tr. 17 ¶ 5. Plaintiff does not challenge this determination by the ALJ.

With respect to the paragraph B criteria of Listing 1.04, the medical records do not appear to contain any diagnosis of plaintiff for arachnoiditis. *See* Listing 1.04B. Again, plaintiff did not identify any such diagnosis. As with Listing 1.04A, she does not cite evidence compelling a finding that her impairments are equivalent to the criteria specified in Listing 1.04B, and her credibility was properly discounted by the ALJ. Further, the determination by Dr. Sandhu's substantiates that plaintiff does not have any impairments meeting or medically equaling Listing 1.04B. Substantial evidence therefore supports the ALJ's determination that plaintiff does not meet or medically equal Listing 1.04B.

Regarding the paragraph C criteria, while the 3 January 2012 MRI provides evidence of disc herniation with significant stenosis (*see* Tr. 269), there is no evidence that the stenosis resulted in pseudoclaudication. As to plaintiff's ability to ambulate, there is no evidence that she used or was prescribed a cane or other assistive device. Evidence that she was not unable to ambulate effectively includes the finding by psychologist Lori J. Downing, Psy.D., in her report on her 13 May 2013 consultative examination of plaintiff that she "was observed to ambulate both into and out of the interview without difficulty or the need for aid." Tr. 303. As with Listings 1.04A and B, plaintiff does not cite evidence compelling a finding that her limitations are equivalent to the criteria specified in Listing 1.04C, and the ALJ properly discounted her credibility. In addition, of course, Dr. Sandhu's previously discussed determination at the reconsideration level substantiates that plaintiff's impairments do not meet and are not medically equivalent to Listing 1.04C. Thus, the ALJ's determination that plaintiff's impairments do not meet or medically equal Listing 1.04C is also supported by substantial evidence.

While the ALJ did not discuss with his Listing 1.04 determination the evidence supporting it, as noted, he indicated at the outset of his determination that it was "based upon a

review of the medical evidence" and that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." Tr. 15 ¶ 4. The ALJ subsequently presents an extensive review of the medical evidence, substantiating his assertion regarding the absence of findings of equivalence by acceptable medical sources. *See* Tr. 16-18 ¶ 5. Particularly in light of the ALJ's explicit reference to his review of the medical evidence, there was no error in the ALJ's not presenting it with his determination on Listing 1.04. *See*, *e.g., Williams v. Colvin*, No. 4:13–CV–259–D, 2015 WL 631250, at *7 n.5 (E.D.N.C. 14 Jan. 2015) ("The fact that the reasons underlying an ALJ's listing determination are not all set out at step three of the sequential analysis does not constitute legal error where the decision read as a whole makes them clear."), *mem. & recomm. adopted*, 2015 WL 631250, at *2 (15 Feb. 2015). Plaintiff's contention that the ALJ did not adequately consider the medical evidence in making his determination on Listing 1.04 is meritless.

Plaintiff has therefore failed to demonstrate that the ALJ erred in his determination that she does not satisfy the paragraph A, B, and C criteria of Listing 1.04. The court accordingly rejects plaintiff's challenge to the ALJ's determination on Listing 1.04.

### C. Listing 14.02

Listing 14.02 relates to systemic lupus erythematosus. Listing 14.00D1 defines systemic lupus erythematosus as follows:

a. *General.* Systemic lupus erythematosus (SLE) is a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hematologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition ("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis).

Immunologically, there is an array of circulating serum auto-antibodies and pro-and anti-coagulant proteins that may occur in a highly variable pattern.

b. *Documentation of SLE.* Generally, but not always, the medical evidence will show that your SLE satisfies the criteria in the current "Criteria for the Classification of Systemic Lupus Erythematosus" by the American College of Rheumatology found in the most recent edition of the Primer on the Rheumatic Diseases published by the Arthritis Foundation.

Listing 14.00D1.

To meet Listing 14.02, a plaintiff must have systemic lupus erythematosus as described

above with:

A. Involvement of two or more organs/body systems, with:
1. One of the organs/body systems involved to at least a moderate level of severity; and
2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
or
B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
1. Limitation of activities of daily living.
2. Limitation in maintaining social functioning.
3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

Listing 14.02.

The ALJ found that plaintiff did not meet or medically equal either paragraph A or B, of

Listing 14.02, as indicated, on the following grounds:

The claimant's lupus is not characterized by [A] involvement of two or more organs/body systems, with: 1) one of the organs/body systems involved to at least a moderate level of severity and 2) at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) or [B] repeated manifestations of systemic lupus erythematosus, with at least two of the constitutional symptoms or signs and one of the following at the marked level: 1) limitation of activities of daily living; 2) limitation in maintaining social functioning; and 3) limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence or pace, per Medical Listing 14.02.

Tr. 15 ¶ 4.

As with Listing 1.04, plaintiff does not specify which paragraph of this listing she contends she satisfies or even set out any of the criteria of the listing. Her entire argument reads:

> ALJ Miller erred in finding that Ms. Person's physical impairments do not meet or medically equal the criteria for Listing 14.02 Systemic Lupus Erythematosus. Plaintiff testified that she is in constant pain all over her body because of her lupus. (T p. 33) Plaintiff has routinely been treated for chronic pain generalized over the body. Plaintiff has significant difficulties in completing task[s] in a timely manner and difficulty performing her activities of daily living. During a disability determination evaluation[,] Dr. Clark noted plaintiff's tandem gait is labored and abnormal. Plaintiff cannot fully squat due to pain and her gait is somewhat antalgic and required assistance getting up and off the one-step table. (T pp. 324-334) This combination of symptoms should result in the plaintiff meeting and/or equaling the functional equivalent of the listing.
>
> ALJ Miller failed to adequately consider the medical evidence in the record in determining that Ms. Person's impairments did not meet or medically equal Listing[] . . . 14.02.

Pl.'s Mem. 7. As also with Listing 1.04, plaintiff's failure to identify the specific criteria which she contends she satisfies, and how, alone justifies rejection of her challenge to the ALJ's determination on Listing 14.02. *See, e.g.*, *Hayes*, 2016 WL 4257191, at *8.

On the merits, the court finds that substantial evidence supports the ALJ's determination that her impairments do not satisfy either of the paragraphs of Listing 14.02. As to paragraph A, plaintiff does not identify any medical evidence in the record establishing that her lupus is characterized by the involvement of two or more body systems, as paragraph A requires. She also makes no explicit reference to even one of the constitutional symptoms—severe fatigue, fever, malaise, or involuntary weight loss—let alone the two that are required under paragraph A. Although plaintiff again relies on her own testimony, the ALJ properly discounted it. And, of course, the determination by Dr. Sandhu at the reconsideration level of review substantiates plaintiff's failure to establish that her lupus meets or medically equals paragraph A. The court concludes that substantial evidence supports the ALJ's determination regarding Listing 14.02A.

Plaintiff's failure to explicitly identify any constitutional symptoms from which she purportedly suffers undermines her contention that she satisfies paragraph B, as with paragraph A. In addition, plaintiff has not alleged that she has marked limitations in either her activities of daily living, maintaining social functioning, or completing tasks in a timely manner, as required under paragraph B. Further, FNP Phillips, to whose opinions plaintiff contends the ALJ gave insufficient weight, as discussed further below, did not identify in her medical source statement any body system involvement and noted only moderate fatigue and malaise. Tr. 360. She also only indicated mild or moderate limitations in plaintiff's activities of daily living, maintaining social functioning, or completing tasks in a timely manner. Tr. 361. Moreover, as before, plaintiff's testimony offers scant support to her contention that she satisfies paragraph B because the ALJ properly discounted it, and Dr. Sandhu's determination at the reconsideration level substantiates plaintiff's failure to establish that her lupus meets or medically equals paragraph B. The court concludes that substantial evidence supports the ALJ's determination that she does not satisfy Listing 14.02B.

For the same reasons discussed with respect to Listing 1.04, the ALJ adequately considered and discussed the medical evidence relating to his determination on Listing 14.02.

Plaintiff has therefore failed to demonstrate that the ALJ erred in his determination that she did not satisfy the paragraph A and B criteria of Listing 14.02. The court accordingly rejects plaintiff's challenge to the ALJ's determination on Listing 14.02.

## VI.    ALJ'S ASSESSMENT OF FNP PHILLIPS' OPINIONS

### A.    Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's]

impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* §§ 404.1527(c), 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. Ruling 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, namely, the length and nature of the treating relationship, the supportability of the opinions, their consistency with the record, any specialization of the source of the opinions, and other factors that tend to support or contradict the opinions. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. Ruling 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Ashmore v. Colvin*, No.

0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [*i.e.*, giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") not given controlling weight also apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), including nurse practitioners. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1) (listing nurse practitioners and therapists among "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *6; *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013). The fact that an opinion is from an acceptable medical source may justify giving that opinion greater weight than an opinion from a source that is not an acceptable medical source, although circumstances can justify giving opinions of sources that are not acceptable sources greater weight. Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5.

The same basic standards that govern evaluation of the opinions of treating medical sources not given controlling weight and explanation of the weight given such opinions apply to the evaluation of opinions of examining, but nontreating sources, and nonexamining sources. *See* 20 C.F.R. §§ 404.1527(c), (e); 416.927(c), (e); *Casey v. Colvin,* No. 4:14–cv–00004, 2015 WL 1810173, at *3 (W.D. Va. 12 Mar. 2015), *rep. & recomm. adopted*, 2015 WL 1810173, at *1 (21 Apr. 2015); *Napier*, 2013 WL 1856469, at *2. More weight is generally given to the opinions of a treating source than to the opinions of a nontreating examining source and to the

opinions of an examining source than the opinions of a nonexamining source.  *See* 20 C.F.R. §§ 404.1527(c)(1), (2); 416.927(c)(1), (2).  Under appropriate circumstances, however, the opinions of a nontreating examining source or a nonexamining source may be given more weight than those of a treating source.  *See*, *e.g.*, *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001) (affirming ALJ's attribution of greater weight to the opinions of a nontreating examining physician than to those of a treating physician); Soc. Sec. Ruling 96–6p, 1996 WL 374180, at *3 (2 July 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.").

Opinions from medical sources on the ultimate issue of disability and other issues reserved to the Commissioner are not entitled to any special weight based on their source.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *2, 5 (2 July 1996).  But these opinions must still be evaluated and accorded appropriate weight.  *See* Soc. Sec. Ruling 96-5p, 1996 WL 374183, at *3 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored.  The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

B.  **Analysis**

The record shows one visit by plaintiff with FNP Phillips, which occurred at Lincoln Community Health on 4 September 2014.  *See* Tr. 362-370.  On 16 September 2014, FNP Phillips completed a "Medical Source Statement of Ability to Do Work-Related Activities."  Tr.

355-58.  On the same date, she also completed a "Medical statement regarding lupus for Social Security disability claim."  Tr. 360-61.

The ALJ summarized various opinions expressed by FNP Phillips in the statements as follows:

In September 2014, Caitlin Phillips, FNP, completed a Medical Source Statement advising that the claimant could lift less than 10 pounds occasionally, stand and/or walk less than 2 hours in an 8-hour workday, and must alternate sitting and standing periodically.  Further, she could never climb or crawl and she could occasionally balance, kneel and stoop.  She was limited to frequent reaching as well (Ex. 13F).  FNP Phillips also completed a Medical Statement indicating the claimant's symptoms included moderate fatigue and malaise.  She also had moderate limitation in activities of daily living and in completing tasks in a timely manner due to deficiencies in pace.  Specifically, the claimant could lift up to 5 pounds on an occasional basis and she could only work up to four hours per day (Ex. 15F).

Tr. 17 ¶ 5.

The ALJ discounted FNP Phillips' opinions, stating:

Very little weight is given to FNP Phillips' findings because she completed her statement after her first visit with the claimant and appears to base the majority of her opinions on the claimant's subjective reports as they are inconsistent with her clinical notes, showing normal range of motion, full muscle strength and had no swollen or inflamed joints.  Moreover, she is not an acceptable medical source.

Tr. 17-18 ¶ 5.

Plaintiff contends that because FNP Phillips' opinions are well-supported by evidence in the record and she, as a treating source, is in the best position to assess plaintiff's capabilities, the ALJ erred in not giving her opinions controlling weight.  The contention is baseless.

All of the reasons cited by the ALJ for discounting FNP Phillips' opinions are factors properly considered in evaluating medical source opinions.  First, the ALJ appropriately considered that FNP Phillips' opinion was completed after only one visit with plaintiff.  The Regulations highlight the length of a treatment relationship and frequency of examination by a

treating source because "the longer a treating source has treated [the claimant] and the more times [the claimant] [has] been seen by a treating source, the more weight [the ALJ] will give to the treating source's medical opinion." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). One visit essentially placed FNP Phillips in no better posture than a one-time examining consultant. As noted, the opinions of a nontreating source are generally entitled to less weight than the opinions of a treating source. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Second, the ALJ properly discounted most of the opinions on the ground that they were based on plaintiff's subjective reports and inconsistent with FNP Phillip's own clinical notes. As discussed, the ALJ properly discounted plaintiff's credibility. Further, inconsistency of a source's opinions with the source's treatment notes are a proper consideration in evaluating the opinions. *See, e.g., Burch v Apfel*, 9 F. App'x 255, 259-60 (2001) (noting that a treating physician's opinions can be discounted when the opinions are directly contradicted by his own treatment notes); 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). The benign findings of FNP Phillips cited by the ALJ—normal range of motion (*i.e.*, "FROM"), full muscle strength, and absence of swollen or inflamed joints (Tr. 368)—are all inconsistent with the significant limitations reflected in the majority of FNP Phillips' findings, as the ALJ found. *See* Tr. 17-18 ¶ 5.

Finally, medical source opinions may be discounted when the source is a non-acceptable medical source, such as a nurse practitioner. *See* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d)(1); Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *5. Indeed, because FNP Phillips is not an

acceptable source, her opinions could not be given controlling weight, as plaintiff advocates. *See* Soc. Sec. Ruling 06-03p, 2006 WL 2329939, at *2.[9]

The court concludes that the ALJ's assessment of the opinions of FNP Phillips is based on proper legal standards and supported by substantial evidence in the record. The court accordingly rejects plaintiff's challenge to it.

## VII. ALJ'S ASSESSMENT OF PLAINTIFF'S RFC

### A. Applicable Legal Principles

As discussed, a claimant's RFC is the most a claimant can still do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.645(a)(1). The assessment of a claimant's RFC must be based on all the relevant medical and other evidence in the record. *Id.* §§ 404.1545(a)(3), 416.645(a)(3). An ALJ's decision must state his RFC determination and provide the supporting rationale for it. *See Mascio*, 780 F.3d at 636.

### B. Analysis

Plaintiff argues that she lacks the RFC to perform any work and that the ALJ erred in finding that she has the ability to perform a limited range of light work. The court finds no error.

Plaintiff relies, in part, on the opinions of FNP Phillips. As discussed, though, the ALJ properly discounted her opinions positing significant limitations on plaintiff. Plaintiff also cites her own testimony. But, again, the ALJ properly discounted it, as previously discussed.

Plaintiff further relies on the report of examining state agency consultant Dr. Clark on his 21 March 2013 evaluation of plaintiff. The ALJ considered Dr. Clark's report, summarizing it as follows:

---

[9] Consistent with her position that FNP Phillips' opinions be given controlling weight, she erroneously refers to FNP Phillips on two occasions as a physician, specifically, as "Dr. Phillips" and "plaintiff's treating physician." Pl.'s Mem. 11.

> In March 2013, the claimant underwent a physical consultative examination with Dr. William Clark. During the evaluation, the claimant reported chronic pain in her back, lower extremities, and shoulders. She tried to exercise and volunteered three days a week. She and her daughter cooked and shopped. She was able to drive. Yet, she was fatigued during the day and developed swelling in her hands and feet. She estimated that she could walk up to 30 minutes at a time, stand for 15 minutes at a time and sit for 30 minutes at a time. She also had a history of cervical spine surgery and demonstrated decreased range of motion in her neck. She had full sensation in her arms but some reduction in range of motion. She had slight reduction in muscle strength in her lower extremities, reduced range of motion in her lumbar spine and had a positive straight leg raise test. She demonstrated an antalgic gait but could get dressed and undressed independently (Ex. 5F).

Tr. 16 ¶ 5.

The findings by Dr. Clark do not compel a determination that plaintiff is disabled, either alone or when considered with the other evidence. Thus, plaintiff is essentially inviting the court to reweigh Dr. Clark's findings. The court cannot properly do so.

Substantial evidence otherwise supports the ALJ's RFC determination. Such evidence includes that addressed by the ALJ in explaining his credibility determination, as set out above.

Additional evidence supporting the ALJ's RFC determination includes the physical RFC assessment of nonexamining state agency consultant Dr. Sandhu. Tr. 82-84 (DIB), 95-97 (SSI). He opined that plaintiff was capable of performing light work with some postural and manipulative limitations. Tr. 82-84, 95-97. Similarly the 16 May 2013 mental RFC assessment by nonexamining state agency psychological consultant April Strobel-Nuss, Psy.D. at the reconsideration level of review found no medically determinable mental impairment. Tr. 80 (DIB), 93 (SSI). The ALJ gave these assessments significant weight, and plaintiff does not challenge them, as previously noted with respect to Dr. Sandhu's assessment. Tr. 17 ¶ 5. These assessments are, of course, reflected in the ALJ's RFC determination, which includes postural and manipulative limitations, but no mental limitations. Tr. 27 ¶ 5.

The court concludes that the ALJ's RFC determination was proper. It accordingly rejects plaintiff's challenge to this determination.

## VIII. CONCLUSION

For the foregoing reasons, based on its consideration of the record as supplemented by all the evidence submitted by plaintiff for the first time to the Appeals Council, the court concludes that the Commissioner's decision is supported by substantial evidence of record and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 16) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 14) for judgment on the pleadings be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until 15 February 2017 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the**

**Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Any response to objections shall be filed within 14 days after filing of the objections.

This 1st day of February 2017.

James E. Gates
United States Magistrate Judge